**Leroy B. HEADSPETH, Appellant,**

v.

**MERCEDES–BENZ CREDIT CORPO-RATION, Laurel Adjustment Bureau, Inc., Appellees.**

**No. 96–CV–641.**

District of Columbia Court of Appeals.

Submitted Feb. 12, 1998.
Decided March 31, 1998.

718 ▪

Leroy B. Headspeth, pro se.

Shannon J. Briglia, with whom Brian P. Waagner, Vienna, VA, was on the brief for Mercedes–Benz Credit Corporation.

John P. Van Beek, Alexandria, VA, was on the brief for Laurel Adjustment Bureau, Inc.

Before WAGNER, Chief Judge, and REID, Associate Judge, and KERN, Senior Judge.

WAGNER, Chief Judge:

Appellant, Leroy B. Headspeth, appeals from an order of the trial court granting summary judgment for appellees, Mercedes–Benz Credit Corporation (MBCC) and Laurel Adjustment Bureau, Inc. (LAB). The controversy arises out of MBCC's repossession of a vehicle Headspeth purchased under a retail installment sales contract after Headspeth defaulted in payments. Headspeth argues for reversal on the ground that the trial court erred in granting summary judgment against him because a disputed issue of fact exits concerning whether MBCC's agent, LAB, trespassed into a fenced area of his property in order to repossess the vehicle. He also contends that the pendency of an action for replevin filed by MBCC against him precluded self-help repossession of the vehicle and the grant of summary judgment as a matter of law. The question raised by Headspeth's first argument under the facts presented is whether a secured creditor may retake possession of the collateral upon default by the debtor by entry onto the debtor's land. We hold that a secured creditor may enter upon the debtor's land to repossess the collateral where it can be accomplished without confrontation or objection, and it does not amount to a breach of the peace within the meaning of D.C.Code § 28:9–503 (1996). We hold further that the filing of a replevin action does not foreclose self-help repossession pursuant to contract under the facts of this case.

I.

In June 1994, Headspeth entered into a retail installment contract with a car dealer to purchase a Mercedes–Benz automobile, which the dealer subsequently assigned to MBCC. The contract required Headspeth to pay for the vehicle in monthly installments of $507.24. The contract has a provision for acceleration of all the remaining payments and repossession of the vehicle upon default in payments.[1] Headspeth made the monthly

---

1. The default provision in the contract reads as follows:

   If you fail to make any payment when it is due, or if you fail to keep any other agreement in this Contract, the Creditor may require you to pay at once all remaining payments less a refund of part of the Finance Charge. Credi-

   tor may also repossess (take back) the vehicle. In this regard, you agree to deliver possession of the vehicle to the Creditor if the Creditor requests you to do so. Creditor may also take goods found in or on the vehicle when repossessed and hold them for you.

payments in full until October 1994, but thereafter made only one $500.00 payment. As of August 9, 1995, Headspeth owed MBCC $16,249.47.

MBCC filed a complaint in replevin against Headspeth on August 9, 1995 in Superior Court, demanding the return of the vehicle or a judgment for the amount of the outstanding balance due. Headspeth filed an answer stating that he could not pay because he had no money and no employment. Before the trial court took any action on the replevin complaint, MBCC engaged LAB to repossess the vehicle. LAB's employee repossessed the vehicle on November 28, 1995.

On December 12, 1995, Headspeth filed the complaint in this case against MBCC and LAB alleging that they wrongfully trespassed on his private property and carried away his 1991 Mercedes–Benz 190E vehicle and, tools, books, and personal papers.[2] Both MBCC and LAB filed a Motion To Dismiss Or In, The Alternative, Motion For Summary Judgment. In support of the motions, MBCC and LAB argued for judgment as a matter of law because Headspeth admitted defaulting on the payments due under the contract, the contract permitted repossession, and repossession of the security had been effected without breaching the peace. In support of these facts, MBCC and LAB attached a copy of the installment contract and the affidavit of Mark Leadbetter. In his sworn affidavit, Leadbetter stated that he repossessed the vehicle at issue from an alleyway near Headspeth's home without confrontation.[3] While not disputing that there was no encounter or confrontation with LAB's agent, Headspeth argued that there was a dispute of fact as to whether the vehicle was taken from an alleyway, as Leadbetter averred, or from Headspeth's fenced-in property. Concluding that this issue was not material to the determination of the case and that MBCC and LAB were entitled to judgment as a matter of law, the trial court granted the motions.

## II.

Headspeth argues that MBCC lost the right to self-help repossession under the contract by filing the replevin action; therefore, MBCC was not entitled to judgment as a matter of law. Specifically, he contends that the terms of the court's order in the replevin action and the doctrine of *custodia legis* preclude any repossession remedy provided for by contract. Headspeth contends that MBCC lost authority to repossess the vehicle until a final judgment in the replevin action could be entered.

■ The order entered in the replevin action, upon which Headspeth bases his argument, states in pertinent part:

[I]f the above designated property is in [Headspeth's] possession or control, [he] shall preserve and retain it in his possession or under his control and keep it amenable to the process of this court and shall not conceal it, pending further order of the court.[4]

Essentially, Headspeth contends that this order required that the property remain under his care to the exclusion of MBCC. We disagree. The language of the order addresses only Headspeth's actions with respect to the property. Under its terms, no limitations are placed on the rights of any others to

2. Under the terms of the sales contract, the creditor had the right to repossess personal effects found in the vehicle; however, MBCC represented in the trial court that Headspeth could recover them at LAB's place of business. No independent issue is raised on appeal related to these items.

3. Mr. Leadbetter specifically stated, in pertinent part, as follows:

[O]n the morning of November 28, 1995, at approximately 10:50 a.m., I located the vehicle in an alleyway near 2309 Shannon Place, S.E., Washington, D.C. I drove the vehicle from the address after confirming that the VIN number of the vehicle matched the VIN number given to Laurel Adjustment by Mercedes–Benz Credit Corporation. I did not see anyone, talk to anyone or engage in any confrontation of any kind with Leroy Headspeth or any other person during the time I possessed the vehicle.

4. The order also scheduled a hearing on MBCC's application for the issuance of a writ of replevin on September 15, 1995, provided a copy of the order and summons were served on Headspeth no later than September 8, 1995. The record in this case does not reflect the date of the service of the summons.

possession, including MBCC's rights under its conditional sales contract. The order required Headspeth to preserve and retain the property, if it was under his control. It is an order to Headspeth to safeguard and not destroy the property until a final determination by the court of the parties' rights to the property. However, the order did not address the responsibility of MBCC with respect to the property. Nor did it prohibit MBCC from proceeding with any self-help remedies available pursuant to contract. Moreover, the order, by its terms, does not place the vehicle in the custody of the court.

Headspeth argues that the replevin action brings the property which is the subject of the action into the custody of the court, thereby precluding MBCC's interference with his possession of it. He relies on the doctrine of *custodia legis* for this argument. The doctrine of *custodia legis* provides that when personal property is repossessed under a writ of replevin, the property is considered to be in the custody of the court. *Brunswick Corp. v. J & P, Inc.*, 424 F.2d 100, 102 (10th Cir.1970). Once the property is repossessed under the writ, it remains in the custody of the court until the court enters judgment determining who is entitled to ownership, although actual possession may be in either party. *Id.* In this case, there is no claim that the vehicle was ever repossessed pursuant to the writ of replevin. Therefore, the doctrine of *custodia legis* does not apply. *Id.* While the plaintiff in a replevin action invokes the jurisdiction of the court to obtain possession of property allegedly wrongfully detained, nothing precludes that party from dismissing or failing to prosecute the action. *See* D.C.Code § 16–3711 (1997). The statute contemplates that this could occur. If the defendant is wrongfully deprived of the property thereby, the statute provides a remedy, including the return of the property and damages. *Id.*

The replevin statute itself does not bar the exercise of the contractual right to self-help repossession once a replevin action is filed. *See* D.C.Code §§ 16–3701, –3713;

*see also* Super. Ct. Civ. R. 64–II. The replevin statute, which authorizes self-help repossession, provides an alternate remedy for the creditor to reclaim possession of the collateral upon default of the debtor without court intervention. *See* D.C.Code §§ 28:9–501(1), 9–503; *see also Council v. Hogan*, 566 A.2d 1070, 1072 (D.C.1989) (replevin statute is an available remedy to enforce a security interest); *O'Donnell v. S & R, Inc.*, 369 A.2d 168, 170 (D.C.1977) (under D.C.Code § 28:9–503, a creditor may regain possession of the property upon default without judicial process). The self-help contractual remedy takes place outside of the judicial process, and therefore the court would have no inherent power to interfere with it. *Interfirst Bank, Dallas, Tex. v. Hanson*, 395 N.W.2d 857, 861 (Iowa 1986). The only limitation to the creditor's statutory remedy to repossess the collateral, other than any provided for by contract, is that the secured party proceed only "if [repossession] can be done without breach of the peace...."[5]  D.C.Code § 28:9–503. There is no provision in this statute which bars the creditor's pursuit of alternate remedies simultaneously. Other courts have held that private contractual rights to recover property are not foreclosed simply because the secured creditor files a replevin action to recover the property. *Interfirst Bank, supra*, 395 N.W.2d at 861 (citing *McIlroy Bank & Trust v. Seven Day Builders of Ark., Inc.*, 1 Ark.App. 121, 613 S.W.2d 837, 842 (1981)).

Based on the facts presented here, the installment contract to which Headspeth agreed provided that repossession of the vehicle would occur upon default. Headspeth admitted that he was unable to pay the monthly installments as agreed. Therefore, MBCC was entitled to self-help repossession so long as it was done without breaching the peace. Accordingly, we consider whether there are any disputed facts bearing upon this issue which prevent the resolution of this issue, thereby requiring a trial.

**5.** We address Headspeth's claim that MBCC's agent breached the peace in repossessing the car in the next section of this opinion.

## III.

Headspeth argues that LAB's agent repossessed the vehicle from his driveway, rather than from the alleyway as contended by MBCC and LAB. He contends that this dispute raises a material issue of fact which precludes the grant of summary judgment. While the parties' versions of these events differ, it is not disputed that the repossession occurred without confrontation or incident. This was a sufficient basis for the grant of summary judgment under applicable law. Under the law relevant to this case, the parties' different versions on this issue raise no material issue as to whether the repossession was accomplished by breaching the peace.

As previously stated, D.C.Code § 28:9–503 permits self-help recovery upon default of the debtor only so long as it is done without breaching the peace. *O'Donnell, supra,* 369 A.2d at 171. " 'It is only when a right of one is denied or resisted by another, that such party must resort to appropriate legal proceedings to enforce that right.' " *Renaire Corp. v. Vaughn,* 142 A.2d 148, 149 (D.C.Mun.1958) (quoting *Universal Credit Co. v. Taylor,* 164 Va. 624, 180 S.E. 277, 280 (1935)). A breach of the peace within the meaning of D.C.Code § 28:9–503 has been held to occur where repossession is accompanied by the threat of violence or where the secured creditor breaks into unopened buildings or garages. *Wallace v. Chrysler Credit Corp.,* 743 F.Supp. 1228, 1232 (W.D.Va.1990) (citing *C.I.T. Corp. v. Short,* 273 Ky. 190, 115 S.W.2d 899, 900 (1938)). In *Renaire,* applying the law of Virginia, the court found that breaking into a private dwelling, even in the owner's absence, pursuant to contract which allowed entry to repossess the collateral, constituted a breach of the peace supporting an action by the buyer in trespass. *Renaire,* 142 A.2d at 149. However, the entry onto the debtor's land, without confrontation or resistance, is not a breach of the peace within the meaning of statutes like our own, which allow repossession upon default. *See, e.g., Cottam v. Heppner,* 777 P.2d 468, 472 (Utah 1989) (removal of cattle from penned corral in debtor's absence does not create likelihood of breach of the peace within the meaning of the self-help repossession statute); *Oaklawn Bank v. Baldwin,* 289 Ark. 79, 709 S.W.2d 91, 92 (1986) (repossession of truck from driveway without incident upheld); *Wallace,* 743 F.Supp. at 1232 (citations omitted) (creditors may enter on the land to repossess collateral); *C.I.T. Corp.,* 115 S.W.2d at 901 (under conditional sales contracts, seller may repossess automobile by entry onto private property provided there is no use of force, violence or other act amounting to a breach of the peace). If "the debtor is present and makes an objection, the breach of the peace analysis comes to the fore: the creditor's agent must then desist." *Wallace,* 743 F.Supp. at 1232.

In this case, there is no allegation that LAB's agent entered the yard in any way but peaceably. No violence nor even any confrontation or objection is alleged to have occurred. Peaceful repossession was a lawful course of action on these undisputed facts. Therefore, the trial court did not err in granting summary judgment.[6]

For the foregoing reasons, the order granting summary judgment for MBCC and LAB, hereby is

*Affirmed.*

---

6. Headspeth contends that the trial court erred in granting the motion without a hearing. The trial court, in its discretion, may decide any motion without a hearing. Super. Ct. Civ. R. 12–I(f). This rule applies to motions for summary judgment. *See Pagan v. Horton,* 464 A.2d 146, 148 (D.C.1983). We find no abuse of discretion in the court's resolution of the motion without a hearing.

We also reject summarily Headspeth's claims that the trial court erred in granting summary judgment on his allegations that MBCC and LAB violated his constitutional rights and maliciously conspired to, and did cross state lines to repossess the property. The undisputed facts do not support these claims. The law does not preclude MBCC from enforcing its security interest in the District. *See O'Donnell, supra,* 369 A.2d at 170.